863 A.2d 1050 (2005)
374 N.J. Super. 101
RAHWAY HOSPITAL, Plaintiff-Appellant,
v.
HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 2004.
Decided January 3, 2005.
*1051 Anthony P. LaRocco, Newark, argued the cause for appellant (Kirkpatrick & Lockhart, attorneys; Eric Tunis, of counsel; Mr. Tunis and Thomas Weisert, on the brief).
*1052 James P. Flynn, Newark, argued the cause for respondent Horizon Blue Cross Blue Shield of New Jersey (Epstein, Becker & Green, attorneys; Mr. Flynn, of counsel; Shiela A. Woolson, on the brief).
Denise M. Illes, Deputy Attorney General, argued the cause for respondent New Jersey Department of Banking and Insurance (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Illes, on the brief).
James A. Robertson argued the cause for amicus curiae New Jersey Hospital Association (Kalison, McBride, Jackson & Murphy, attorneys; Andrew F. McBride, III, of counsel; Mr. McBride, Mr. Robertson and John J. Deno, on the brief).
Before Judges LEFELT, ALLEY and FALCONE.
The opinion of the court was delivered by
LEFELT, J.A.D.
This appeal focuses on the four-month period following termination of Rahway Hospital's in-network health-care services agreement with Horizon Blue Cross Blue Shield of New Jersey, a non-profit health insurer. The determinative issue is whether the Commissioner of the Department of Banking and Insurance correctly construed N.J.S.A. 17:48E-10(a)(2), of the Health Service Corporations Act (HSCA), to preclude Rahway from recovering the difference between the below-cost contract "payment rates" and higher out-of-network market rates for medical services Rahway provided to non-HMO Horizon subscribers during the four-month period in question. We conclude that the Commissioner incorrectly decided that N.J.S.A. 17:48E-10(a)(2) requires that Rahway accept contract "payment rates" for Horizon's non-HMO subscribers who were provided care during the period at issue. Consequently, we reverse.

I.
At the end of December 1993, Rahway, a not-for-profit hospital, entered into a one-year agreement, effective January 1, 1994, to provide healthcare services to Horizon subscribers at below-cost "payment rates," as opposed to Rahway's higher "out-of-network rates." The network service agreement, which was actively negotiated by Horizon and Rahway, applied to HMO and non-HMO Horizon subscribers and could be automatically renewed for two additional one-year terms.
The agreement allowed for termination, with and without cause. If a party wished to terminate the agreement without cause, Section 5.2 required that party to provide "the other Party with ninety (90) days advance written notice of the Party's intention to terminate this Agreement." Section 5.4, dealing with the "Effect of Termination," further required that for Horizon subscribers who were "undergoing an active course of treatment at [Rahway] at the time this Agreement is terminated, [Rahway] will continue to provide care until discharge, completion of treatment or until alternate arrangements have been made." Section 5.4 also provided that "payment to HOSPITAL for care rendered to [subscribers] during such period shall be subject to the terms and conditions of this Agreement." This Section further provided that should either party terminate the agreement, "the Parties shall abide by all obligations that may be required by law, rule or regulation with respect to [subscribers]."
In 1998, the parties amended section 5.1, dealing with expiration of the network agreement, as contrasted with termination, in this fashion: "In the event the Parties are unable to agree on the terms of a new *1053 agreement upon the expiration of this Agreement, the Parties shall continue to abide by the then current terms of this Agreement for a period of four (4) months from an expiration date mutually agreed upon by the Parties." Horizon contended that this amendment was necessary to conform the agreement with a section of the Health Maintenance Organizations Act (HMO Act), N.J.S.A. 26:2J-1 to -44, requiring that the terms of an expired agreement be followed for four months after expiration. N.J.S.A. 26:2J-11.1; N.J.A.C. 8:38-3.5(e).
At the same time the expiration clause, Section 5.1, was amended because of the HMO Act, the parties also amended the "Effect of Termination" clause, Section 5.4, to provide that in order for a Horizon subscriber being treated at the hospital to continue to receive care at the payment rates for 120 days after termination of the agreement, the subscriber's continued treatment must be "medically necessary." Both the Departments of Banking and Insurance and of Health and Senior Services approved the amendments to the agreement.
In 1998 and 1999, Rahway claims to have sustained substantial financial losses because of the agreement with Horizon. After unsuccessfully attempting to negotiate higher rates closer to the hospital's actual costs, reflected in its out-of-network rates, Rahway notified Horizon, in accordance with Section 5.2, that it intended to terminate the agreement in ninety days, as of July 31, 1999. Horizon answered by claiming that under the HMO Act, Rahway had to continue to serve its HMO and non-HMO subscribers at payment rates for four months after the termination.
During the four-month period after termination, Rahway continued to accept and treat all of Horizon's subscribers (HMO and non-HMO), and Horizon reimbursed Rahway at the payment rates without regard to whether the subscribers had been undergoing active treatment as of July 31, 1999. However, Rahway claimed entitlement to reimbursement at the out-of-network rates during that four-month period with respect to all of Horizon's subscribers who were not in active treatment on the date of termination.
After the four-month period, Horizon "began paying out-of-network rates for all subscribers treated at Rahway." The parties agree that the only dispute in this appeal involves the proper payment to Rahway for non-HMO Horizon subscribers treated at Rahway during the four months after the service agreement terminated, an amount that Rahway claims is almost two million dollars.

II.
This is the second time this dispute is before us. Originally, Rahway sued Horizon in the Law Division seeking various forms of declaratory relief and also asserting claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Horizon defended by claiming that the termination provisions of the agreement conflicted with the HSCA, N.J.S.A. 17:48E-10(a). A motion judge granted Horizon summary judgment and dismissed Rahway's complaint. The judge found that it was not necessary to request the Department of Banking and Insurance to consider this dispute because the Department had already ruled on this issue in a similar case. The judge found determinative that the Department had previously approved a settlement in Englewood Hospital v. Horizon Blue Cross and Blue Shield of New Jersey, No. BER-L-11198-99 (Law Div. Jan. 31, 2000), order after transfer, Dep't of Banking & Ins., No. A00-148 (November 9, 2000), finding that it was reasonable and not contrary to public policy for Englewood *1054 Hospital to provide care to Horizon's non-HMO subscribers at the contract payment rates for four months after the service agreement terminated. Relying on this previous administrative order, the Law Division judge granted Horizon summary judgment and dismissed Rahway's complaint.
Upon Rahway's appeal, we found that the primary jurisdiction doctrine, Muise v. GPU, Inc., 332 N.J.Super. 140, 158-59, 753 A.2d 116 (App.Div.2000), required that we transfer the matter to the Department of Banking and Insurance so the Commissioner could "have the first opportunity of interpreting [the pertinent provision of the HSCA] N.J.S.A. 17:48E-10(a) in a litigated context." We did not find support for the Law Division judge's conclusion that approval of the Englewood settlement was a sufficient indication of the Department's position on this issue. We "found no cases holding that an agency's approval of a settlement constitutes an adjudication of the merits or an authoritative interpretation of a statute."

III.
On our transfer of this dispute to the Department of Banking and Insurance, the Commissioner acknowledged that Section 5.4, "Effect of Termination," provided that for those Horizon subscribers who, at the time of termination, were undergoing an active course of treatment at the hospital, where that treatment was medically necessary, Rahway had to provide hospital care at the contract rates for 120 days following the termination date. The Commissioner revealed that "[i]f that were all that the Agreement said, this dispute could be resolved simply." But, the Commissioner felt compelled to extend her analysis because Section 5.4 also required the parties to "comply with any obligations imposed by law, rule or regulation with respect to [Horizon subscribers]."
The Commissioner then found that the HSCA applied to the agreement between Horizon and Rahway, as Horizon is a health service corporation, N.J.S.A. 17:48E-1(e), and Rahway is a provider of health care services, N.J.S.A. 17:48E-1(i). The HSCA states, in pertinent part, that "30 days' written notice of termination of the agreement may be given to the health service corporation ... by any participating provider of health care services...." N.J.S.A. 17:48E-10(a)(2). The HSCA goes on and states that termination notice "shall not apply to any subscription certificate in force at the time of notice until the first date thereafter when the subscription certificate may properly be terminated by the health service corporation...." Ibid. The subscription certificate is the agreement between Horizon and the individual patient or group of patients.
Therefore, according to the Commissioner, under the HSCA, the agreement between Rahway and Horizon including those terms relating to services and payment "would remain in place for those in-force contracts until the contracts (subscription certificates) came up for renewal or could otherwise be terminated by Horizon." In other words, Rahway could terminate its agreement with Horizon upon proper notice, but the termination would not be effective as to individual subscribers until the date each subscription agreement expired.
The Commissioner then recognized that changes in federal law since the HSCA was enacted "have effectively eliminated the ability of insurers, including health service corporations, to non-renew or terminate certain healthcare coverage." For example, the Commissioner cited the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104-191, 42 U.S.C.A. § 300gg-12, which except for very limited circumstances, such *1055 as non-payment of premiums, fraud, or market withdrawal, "does not permit non-renewal of coverage upon termination of a provider agreement." According to the Commissioner, "today a health service corporation has virtually no right to terminate coverage for its subscriber. Therefore, a hospital would have to continue providing services at the contract rate to that subscriber indefinitely in accordance with a literal reading of N.J.S.A. 17:48E-10(a)(2)."
After rejecting an argument that HIPAA and other laws impliedly repealed the HSCA, the Commissioner read the pertinent provision, N.J.S.A. 17:48E-10(a)(2), "in a manner such that it can be given meaning," by inserting "a reasonable time period [of four months] for the continued providing of services at the contract rate." By consulting a section of the HMO Act, N.J.S.A. 26:2J-11.1, which was administered by the Department of Health and Senior Services, the Commissioner found that four months would be reasonable. N.J.S.A. 26:2J-11.1 provides that when an HMO and a hospital are unable to agree upon the terms of a new contract upon the expiration of the current contract, the parties "shall continue to abide by the terms of the most current contract for a period of four months from a severance date mutually agreed upon by both parties." The Commissioner also embraced N.J.A.C. 8:38-3.5(e), which was promulgated by the Department of Health and Senior Services and provides that when "a hospital's contract is not renewed, or is terminated by either party, the hospital and the HMO shall continue to abide by the terms of the most current contract for a period of four months...."
According to the Commissioner, the four-month period was reasonable because it "serves to balance the interests of both parties in that it preserves the ability of either party to the agreement to terminate it while providing for a reasonable period of transition to do so." The Commissioner further concluded that "[s]uch a reading of the provision also serves the salutary purpose of ensuring that care is continued at the contracted rates for patients who are the innocent by-standers to a dispute between a hospital and a health service corporation."
In this manner, the Commissioner found that N.J.S.A. 17:48E-10, of the HSCA, was "applicable to the Agreement and requires that Rahway accept contract rates for Horizon's subscribers for all Horizon patients provided care in the four-month period following termination of the contract, i.e., through November 30, 1999."

IV.
Rahway has now re-appealed to us from the Commissioner's decision. It is well settled that an appellate court is not bound by an agency's interpretation of a statute. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973). Nevertheless, we must give "substantial deference" to an administrative agency's interpretation of a statute it is charged with implementing, "provided it is not plainly unreasonable." Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992). In addition, when construing a statute, some "judicial surgery" is permissible to preserve the legislature's intent, even if some "engrafting" of requirements is necessary. See Binkowski v. State, 322 N.J.Super. 359, 378, 731 A.2d 64 (App.Div.1999).
Administrative agencies, however, are statutory creatures, whose powers are circumscribed by the Legislature. In re Certain Sections of the Unif. Admin. Procedure Rules, 90 N.J. 85, 93, 447 A.2d 151 (1982). Any legislative interpretation similar to "judicial surgery" performed by an agency, therefore, must be carefully *1056 scrutinized to ensure the agency has not overstepped its bounds.
Before being amended, Section 5.4 of the agreement required Rahway to continue coverage for those already being treated at the time of termination. It set no deadline. Treatment at the contract rates was to continue as long as treatment was needed.
With the 1998 amendment, which was drafted by Horizon, however, the effect of termination was significantly modified. Rahway was bound to continue coverage for those subscribers who were already being treated, but only if and as long as treatment was "medically necessary." And, for these subscribers, Rahway was required to accept the contract payment rates for 120 days, after which, presumably, it could begin charging market or out-of-network rates.
Despite the parties' agreement, the Commissioner ruled that Rahway had to serve all subscribers at the discounted contract rates for four months after termination, even those not being treated or those who did not, for medical reasons, require continued treatment. This ruling negated the parties' negotiated agreement and constituted a rewriting of the contract to Horizon's advantage. The Commissioner thus deprived Rahway of the benefit of its bargain.
"A court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument." E. Brunswick Sewerage Auth. v. E. Mill Assocs., 365 N.J.Super. 120, 125, 838 A.2d 494 (App.Div.2004). Nor may a court "make a better contract for either party, or supply terms that have not been agreed upon." Bar on the Pier, Inc. v. Bassinder, 358 N.J.Super. 473, 480, 818 A.2d 424 (App.Div.), certif. denied, 177 N.J. 222, 827 A.2d 289 (2003); Carroll v. United Airlines, Inc., 325 N.J.Super. 353, 358-59, 739 A.2d 442 (App.Div.1999) ("Where the terms of an agreement are clear, [courts] ordinarily will not make a better contract for parties than they have voluntarily made for themselves, nor alter their contract for the benefit or detriment of either, particularly in a commercial, arms-length setting."). We are aware of no principle of law that confers on an administrative agency greater authority than a court possesses to rewrite or alter the terms of a contract.
The parties did agree that "[i]n the event of termination of this Agreement, the Parties shall abide by all obligations that may be required by law, rule or regulation...." Here, however, the Commissioner disregarded the clear language of the parties' agreement and applied an HMO regulation in a non-HMO context that did not exist at the time the parties executed the original agreement (1994), the amendments (1998), or the termination (1999).
That HMO regulation became effective on May 1, 2000. 32 N.J.R. 1544 (May 1, 2000). By its terms it applies to hospitals and HMOs, and requires a four-month extension in cases of both non-renewal and termination, without regard to whether continued treatment was "medically necessary." N.J.A.C. 8:38-3.5(e). At the time the contract was terminated in this case, a regulation then in effect addressed terminations only by an HMO of a provider and required continued services at the contract price for "up to 120 calendar days in cases where it is medically necessary for the member to continue treatment with the terminated provider." N.J.A.C. 8:38-3.5(a)4. When Rahway terminated its contract with Horizon, there was no regulation in effect that applied to terminations instituted by the health-care provider, such as Rahway here.
*1057 Generally, a regulation only applies prospectively. In re Failure by Dep't of Banking & Ins., 336 N.J.Super. 253, 267, 764 A.2d 494 (App.Div.2001). A regulation may apply retroactively if the Legislature or agency has expressed that intent, either explicitly or impliedly, and retroactive application would not cause a manifest injustice or an interference with a vested right. State Troopers Fraternal Ass'n v. State, 149 N.J. 38, 54, 692 A.2d 519 (1997). Neither the language of N.J.A.C. 8:38-3.5(e) nor the agency' commentary to the proposed adoption (31 N.J.R. 953 (Apr. 19, 1999)) reflects an intention to apply the new regulation retroactively.
Furthermore, Rahway knew and accepted that there was a risk that the law regarding termination of agreements could change in a manner adverse to its position. But Rahway never agreed to be bound by a regulation that did not come into existence until after the agreement with Horizon had been terminated. Application of this regulation to the agreement impaired Rahway's contractual interests and thereby interfered with a vested right. State Troopers Fraternal Ass'n, supra, 149 N.J. at 57, 692 A.2d 519.
Thus, the Commissioner has rewritten the only statute that is arguably applicable, the HSCA, by borrowing wording from the HMO Act that concededly does not directly apply to this dispute, concerning non-HMO subscribers and an agreement's termination rather than expiration, and from a rule implementing the HMO Act that was not in effect at any critical time during this dispute.

V.
In our prior decision, we acknowledged that the "parties do not dispute that the key section of the HSCA, N.J.S.A. 17:48E-10(a), applies to hospitals to some extent." The HSCA, however, was passed in 1985, L. 1985, c. 236, § 1, and did not address billing rates because at the time the legislation was enacted, rates were controlled through a rate setting, public utility type process. N.J.S.A. 17:48E-10(d). A State Hospital Rate Setting Commission established hospital rates in New Jersey for all payers, including Horizon, commercial insurers, and individuals. L. 1978, c. 83, § 1.
The Commissioner was concerned that a literal application of the HSCA would obviate Rahway's termination of the network agreement and require the continuation of medical services. In this appeal, however, continuity of service is not the problem. The facts show that Rahway provided care for all Horizon subscribers, including non-HMO subscribers, during the four-month period and, in fact, continued to provide care for all Horizon subscribers after the four-month period. Before the parties amended Section 5.4, Rahway had agreed to continue care indefinitely, at the contract prices, to Horizon patients being treated at the hospital when the agreement was terminated. The only dispute between the parties, therefore, is over the rates that could be charged subscribers, or stated another way, whether N.J.S.A. 17:48E-10(a) governs contract rates under the parties' agreement.
The Commissioner believed that a literal reading of the HSCA would require not only continuity of service but also continuity of service at the contract rates. However, at the time of the Commissioner's decision, the prior Hospital Rate Setting Commission had been abandoned and replaced by the present system, which permits rate negotiation. Therefore, one could reasonably argue that the statute is at best vague as to what impact negotiated limitations on the rates may have on the termination procedures set forth in N.J.S.A. 17:48E-10(a)(2). The legislative intent in that regard is simply not clear.
*1058 Considering that there was no rule that directly pertained to the agreement and the HSCA did not address billing rates or could, at least arguably, be read as not conflicting with the negotiated rates in this case, the Commissioner could have resolved the dispute by simply stating that there was no legislative or regulatory barrier to enforcement of the rate limitations negotiated by the parties in the agreement.
Instead, the Commissioner interpreted the HSCA in a manner akin to transplanting a human body part, an operation that far exceeded the bounds of reasonable "judicial surgery" or agency statutory construction. "[A]n administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment." Serv. Armament Co. v. Hyland, 70 N.J. 550, 563, 362 A.2d 13 (1976).

VI.
Consequently, we are obliged to reverse. This resolution renders moot, Rahway's correlative argument that the agency undertook a rulemaking without compliance with the Administrative Procedure Act. See Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984).
Because of the manner in which we have reversed the Commissioner of Banking and Insurance, we also need not decide whether the Commissioner could have accomplished through rulemaking what she attempted through legislative construction. We take no position on whether the Commissioner's rulemaking powers would permit her to achieve the very result she attempted by improperly rewriting the HSCA.
Finally, we point out that, over the years, there has been serious concern regarding whether N.J.S.A. 17:48E-10(a)(2) covers contracts between health service corporations and hospitals or applies only to physician agreements. In a 1999 letter to the Department, for example, Horizon explained that if the statute is applied to its network hospital agreements, "and the current contract rates are extended until the subscriber agreements then in force could be terminated, the result will be to impose a substantial financial hardship on hospitals and an undue administrative burden on hospitals and Horizon BCBSNJ."
We share these concerns over the impracticality of applying the HSCA literally to the termination of network agreements between Horizon and provider hospitals. As Horizon more specifically explained in 1999, "even as to the portion of covered persons whose subscription agreements are terminable on an anniversary date, tracking the various dates upon which particular covered persons' subscription agreements are terminable is a tremendous administrative burden for both the hospital and Horizon BCBSNJ. Impossible billing situations would be created that neither party could administer."
We have decided this matter without considering Rahway's argument that these impracticalities together with subsequent legislative developments have impliedly repealed whatever application to agreements between health service corporations and hospital providers the legislature originally intended for N.J.S.A. 17:48E-10(a). Other than recognizing the settled doctrine discouraging repeals by implication, State v. Hotel Bar Foods, Inc., 18 N.J. 115, 129, 112 A.2d 726 (1955), we take no position on this argument. Instead, we suggest that the Legislature may wish to review N.J.S.A. 17:48E-10(a)(2), in light of the concerns highlighted by this appeal.
Reversed.