**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3834-19

S.G.,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

Argued November 29, 2021 – Decided December 21, 2021

Before Judges Sumners and Firko.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Jeffrey D. Padgett, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Connor V. Martin, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner S.G.[1] appeals from the May 15, 2020 final administrative decision of the Board of Trustees of the Teacher's Pension and Annuity Fund (TPAF) (the Board) denying her application for ordinary disability retirement benefits.[2] The Board agreed with the Administrative Law Judge's (ALJ) determination that petitioner was incapable of performing her duties as a teacher. However, the Board rejected the ALJ's initial decision that petitioner's injuries were not permanent and disabling based on her insufficient medical expert proofs. Because our review of the record in light of the relevant legal precedents supports the Board's decision, we affirm.

---

[1] We utilize initials to protect petitioner's privacy.

[2] Throughout petitioner's brief, she erroneously cites to the Public Employees' Retirement System (PERS), N.J.S.A. 43:15A-1 to -161, rather than the appurtenant TPAF. However, the Department of the Treasury, Division of Pension and Benefits (Division) administers both the PERS and TPAF. In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 396-97 (App. Div. 2018) (citing Burgos v. State, 222 N.J. 175, 184 (2015)). Additionally, "the pertinent language of each statute is nearly identical or substantially similar: '[u]pon retirement for [ordinary or accidental] disability, a member shall receive' the applicable retirement allowance." Id. at 397 (citations omitted); see, e.g., N.J.S.A. 43:15A-45, -46; N.J.S.A. 18A:66-41, -42; see also Kasper v. Bd. of Trs. of Tchrs. Pension & Annuity Fund, 164 N.J. 564, 574 (2000) (noting the PERS is "governed by accidental disability provisions identical to the TPAF").

A-3834-19

We glean these facts from the record. Petitioner was enrolled in the TPAF in January 1992 when she was hired by the Lacey Township Board of Education as a schoolteacher, where she worked for approximately twenty-one years. Requirements for the position included: (1) "[d]evelop[ing] lessons plans"; (2) "[t]ranslat[ing] lesson plans . . . into learning experiences"; (3) "[e]stablish[ing] and promot[ing] acceptable standards of pupil behavior"; (4) "[m]aintain[ing] professional competence and continuous improvement"; and (5) evaluating student progress, communicating said progress with parents, and cooperating with other Lacey staff in assessing and assisting students "with health, attitude[,] and learning problems." Additionally, the position included a required minimum amount of non-teaching duties, such as hallway duty, "milk distribution[,] and supervision of cafeterias, sidewalks, bus loading and unloading and playground."

On February 17, 2010, petitioner slipped on black ice in the school's parking lot and injured her left ankle. She required surgery and an installation of "[two] metal plates and [nine] screws." Petitioner did not return to work for the rest of that school year. In September 2011, petitioner returned to work and performed her duties but continued to experience difficulty walking. On March 23, 2013, petitioner fell down the stairs in her home. On April 9, 2013, she was

tripped by a student and fell, resulting in a fractured right foot, which healed on its own.

In August 2013, Dr. William Kennard, an orthopedic surgeon, provided petitioner with a note to excuse her from work for two months based on her subjective complaints. However, petitioner did not return to work for the rest of that school year or the following academic year. Petitioner testified: "I had a lot of sick days. We decided to use them and see if I felt better. I just didn't feel I was capable of doing it." The record shows petitioner never asked for any accommodations from her employer.

On August 26, 2013, petitioner submitted her application for ordinary disability retirement benefits, N.J.S.A. 18A:66-39(b), with an effective retirement date of March 2014.[3] She claimed to have "a slight limp and the inability to stand for more than [two] hours at a time." On November 8, 2013, petitioner amended her application to request accidental disability retirement

_____

[3] Both petitioner's August 26, 2013 application for ordinary disability benefits and November 8, 2013 amended application for accidental disability benefits list her retirement date as February 1, 2014. However, petitioner testified, "I think . . . I retired . . . March 1[, 2013]." The ALJ noted, "[a]fter having used her sick time to deal with the aftermath of her injury [petitioner] retired in March 2014." These discrepancies are not germane to our decision. The record reflects that petitioner never returned to work for Lacey Township Board of Education after her April 9, 2013 injury.

benefits, N.J.S.A. 18A:66-39(c).   On March 16, 2014, the Board denied petitioner's application for accidental retirement benefits.  The Board found: (1) petitioner's February 17, 2010 injury, slipping on black ice, "did not occur during and as a result of . . . regular or assigned duties," but instead "happened in the parking lot"; (2) [petitioner's] March 23, 2013 injury, falling down the stairs, "occurred at home" and therefore,  "was not considered by the Board"; and (3) petitioner's April 9, 2013 injury, tripped by student, although identifiable, undesigned, and unexpected, was not a "direct caus[e] of a total and permanent disability."  Additionally, the Board determined petitioner was not "totally and permanently disabled from the performance of [her] regular and assigned duties."

On March 23, 2014, petitioner appealed the Board's decision, and the matter was transmitted to the Office of Administrative Law (OAL) as a contested case.  Petitioner "subsequently amended her request back to ordinary disability benefits"[4] and the matter proceeded accordingly.[5]  Dr. Lawrence Barr, a board-

---

[4] Petitioner's subsequent amendment was not included in the record and the date of the amendment is unknown.

[5] The Board's decision, as recorded in its March 6, 2014 letter, denied petitioner's amended "application for [a]ccidental [d]isability retirement benefits."  The ALJ's February 20, 2020 initial decision, however, addressed

certified orthopedic surgeon, testified on behalf of petitioner. Dr. Barr opined petitioner "is totally and permanently disabled from her job duties as a teacher" and "is not able to stand on her feet for long periods of time or walk long distances without having difficulty." Dr. Jeffrey F. Lakin, the Board's expert, who is also board certified in orthopedic surgery, opined petitioner is "not totally and permanently disabled from her teaching position."

Following a two-day hearing, the record formally closed on February 23, 2017. "Extensions of time were granted for the filing of the [i]nitial [d]ecision," and three years later, on February 20, 2020, the ALJ rendered her initial decision.[6]

In reviewing the record, the ALJ found:

> [Petitioner] to be credible in her testimony regarding the pain, discomfort and balance issues related to her ankle and foot. She cogently described how the successive injuries to her left ankle and right foot had affected her work and daily life. Her testimony was consistent with her descriptions of her condition given to her medical providers over a series of years. . . . She also was credible in her testimony that she had not sought accommodations for her ankle and foot problems as she assumed, they would not be granted.

---

petitioner's second amended application for ordinary disability retirement benefits.

[6] The record does not indicate why there was a three-year delay in the issuance of an initial decision.

A-3834-19

While that assumption may have been in error, she was forthright and direct in her admission.

Whether or not [petitioner] has a disabling foot and ankle condition requires an evaluation of the credibility of the expert medical testimony presented in this matter. Overall Dr. [Barr] was more credible in his testimony. While both experts presented a similar picture of her medical history, [petitioner's expert] found evidence in his physical examination of toe deformity, tenderness around the fourth and fifth metatarsals, and pain on toe movement. Additionally, she was unable to complete the heel to toe walking portion of the exam, signaling balance and gait issues. His opinion that she had a disabling condition was corroborated by her treating physicians . . . who corroborated her subjective complaints and noted tenderness and swelling in the affected area. [Dr. Barr] was more responsive in his testimony and directly addressed questions posed to him on cross-examination.

Dr. [Lakin], on the other hand, was dismissive of [petitioner's] subjective complaints and found her treating physicians' reports to be of little value, dismissing their reports of tenderness and swelling. He was obstreperous and at times unresponsive during cross-examination. On balance his testimony dismissing all of her complaints was less credible in light of her credible testimony and the reports of her treating physicians.

As a result, [the ALJ] [found] that petitioner has a disabling condition of her foot and ankle which limits her ability to stand or walk for long periods of time. . . .

. . . However, she has not met her burden that her condition disables her from her job as a middle school

7

math teacher. A review of her job duties . . . shows that she can fulfill those duties without long periods of walking or standing. While she was credible in her testimony that her principal advised teachers to move around the classroom, there was no other evidence that it was a requirement of her job. It may well be that good teaching practice and the concomitant effort to control the classroom favor such movement but nowhere is it set forth as a requirement. Further, petitioner was candid that she chose not to request any accommodations from such a requirement should it have existed.

Petitioner's occasional hall and cafeteria duty did specifically require long periods of standing and movement. . . . Such duty was classified as non-teaching duty in the agreement between Lacey and the education association and non-teaching dut[ies] listed a variety of activities which could be performed without periods of standing and movement. [Petitioner] simply chose not to ask for any accommodations for her condition in the assignment of non-teaching duties. As such she has not carried her burden of proof that she was unable to perform the functions of her position.

On March 4, 2020, exceptions to the ALJ's initial decision were filed with the Division of Pensions and Benefits, by counsel for the Board explaining although "[t]he ALJ correctly found [petitioner] is not entitled to ordinary . . . benefits because she failed to prove that her condition disables her from her job," the ALJ incorrectly found that petitioner "has met her burden in proving that she has a [permanent] disab[ility]." The exceptions claimed the ALJ erred in finding Dr. Barr's testimony to be more reliable than Dr. Lakin's testimony. And

consequently, the Board should modify the ALJ's initial decision by finding petitioner is not totally and permanently disabled because she: (1) can still perform most of her job duties; and (2) failed to ask for accommodations.

On May 15, 2020, after considering all exhibits, the initial decision, and filed exceptions, the Board "voted to modify the [i]nitial [d]ecision and adopt the ALJ's finding that [petitioner] is not entitled to [o]rdinary [d]isability . . . retirement benefits." Although the Board "affirmed the ALJ's determination that [petitioner] failed to prove that her allegedly disabling condition incapacitates her from her job," the Board "rejected the ALJ's finding that [petitioner] had proved that she has a disabling . . . condition with respect to certain 'non-teaching' job activities" because such a "finding is not supported by the objective evidence in the record." The Board weighed the "objective evidence" in the record and determined:

> The Board's expert, Dr. [Lakin] . . . reliably explained that [petitioner] had a completely normal orthopedic examination in relation to her foot and ankle . . . . There was no evidence of arthritic pain or deformity. In August 2013, Dr. [Kennard] provided [petitioner] with a note keeping her out of work for two months, but due to the subjectivity of her complaints could not justify a longer timeframe. Because of the lack of objective evidence to justify [petitioner's] subjective complaints, Dr. Lakin concluded that [petitioner] is not totally and permanently disabled.

In contrast to Dr. Lakin, [petitioner's] expert Dr. [Barr] relied a great deal on her subjective complaints. While he found [petitioner] disabled because she could not stand or walk at length without difficulty, he conceded that the signs of difficulty that she exhibited were within her control and thus subjective. Additionally, Dr. Barr failed to relate [petitioner]'s complaints to her duties, and also failed to consider potential accommodations in [petitioner]'s job as a teacher. Therefore, the Board rejected the ALJ's finding that Dr. Barr opinion was more reliable than Dr. Lakin's with respect to [petitioner's] purported disability.

Although the Board rejects the finding that [petitioner] is disabled with respect to some non-teaching responsibilities, it recognizes, as did the ALJ, that the inability to perform some aspects of a position does not always equate to incapacitation from the general area of a member's ordinary employment. . . .

To the extent that [petitioner] subjectively finds herself unable to complete some of her duties due to foot and ankle pain, she . . . ha[d] an option to request accommodation from her employer. . . . [Petitioner]'s failure to seek accommodation severely undermines her claim of disability.

The Board adopts the ALJ's determination that [petitioner] is not eligible for [ordinary disability] retirement benefits, and rejects her determination that [petitioner] is disabled from "non-teaching duties," and modifies [the ALJ's] factual findings as set forth above.

[(internal citations omitted).]

A-3834-19

In this ensuing appeal, petitioner argues that she is physically incapacitated from the performance of her regular and assigned job duties as a mathematics middle school teacher and hall/cafeteria monitor. She asserts while the ALJ applied the correct legal standard, the ALJ "reached an erroneous conclusion by failing to account for [p]etitioner's credible testimony that her job as a math teacher required her to stand or move around the classroom for long periods of time during teaching duties."

Our review of decisions by administrative agencies is limited, with the party challenging the validity of the administrative action carrying a substantial burden of persuasion. See generally, In re Stallworth, 208 N.J. 182, 194 (2011). Under our standard of review, an agency's determination must be "sustained 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Thus, on appeal, our role is limited to the evaluation of three factors:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of relevant factors.

[Herrmann, 192 N.J. at 28 (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

When the agency's decision satisfies those criteria, we are obliged to afford substantial deference to the agency's expertise and superior knowledge of a particular field, even if we would have reached a different result from that reached by the agency. Ibid. (citations omitted); see In re Taylor, 158 N.J. 644, 657 (1999) (citations omitted). While we are not bound by an agency's interpretation of legal issues, which we review de novo, Russo, 206 N.J. at 27 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)), "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes."

A-3834-19

Ibid. (citing Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007)).

"The Board has ultimate authority . . . to adopt, reject[,] or modify" an ALJ's findings. N.J. Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 507 (App. Div. 1983) (citing In re License of Suspension of Silberman, 169 N.J. Super. 243, 255-56 (App. Div. 1979)). But see N.J.S.A. 52:14B-10(c) (requiring the Board to "state clearly the reasons for" rejecting the ALJ's findings). The Board must defer to the ALJ on the credibility of a lay witness, unless the Board "determine[s] from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." In re Adoption of Amends. to Ne., Water Quality Mgmt. Plan, Upper Raritan, Sussex Cnty., 435 N.J. Super. 571, 584 (App. Div. 2014) (second alteration in original) (quoting N.J.S.A. 52:14B-10(c)).

But, "the [ultimate] choice of accepting or rejecting the testimony of [a lay] witness[] rests with the administrative agency." Renan Realty Corp. v. State, Dep't of Cmty. Affs., Bureau of Hous. Inspection, 182 N.J. Super. 415, 421 (App. Div. 1981). Here, the Board did not disturb the ALJ's finding that petitioner was a credible witness, but instead, the Board relied on the experts'

13

testimony and the objective evidence in the record in making its decision. The Board was not required to prove the ALJ's finding to be "arbitrary, capricious or unreasonable or . . . [un]supported by sufficient, competent, and credible evidence in the record." In re Adoption of Amends. to Ne., 435 N.J. Super. at 584 (quoting N.J.S.A. 52:14B-10(c)).

In the matter under review, "the Board rejected the ALJ's finding that [petitioner] had proved she had a disabling [condition]" because it was "not supported by the objective evidence in the record." In rejecting the ALJ's finding, the Board stated specifically: (1) "[t]here was no evidence of arthritic pain or deformity"; (2) petitioner's August 2013 note from Dr. Kennard, which kept "her out of work for two months," could not be extended "due to the subjectivity of [petitioner's] complaint[s, which] could not justify a longer timeframe"; and (3) petitioner's expert, Dr. Barr, who "relied a great deal on her subjective complaints[,] . . . . conceded that the signs of difficulty that she exhibited were within her control and thus subjective[,] . . . . [and] failed to consider potential accommodations in [petitioner]'s job as a teacher."

In weighing the testimonies of the expert witnesses, the Board considered both the experts' reliance on petitioner's subjective complaints as well as the objective evidence in the record. We are satisfied the Board's findings "could

reasonably have been reached on sufficient credible evidence present in the record." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).

Petitioner argues the Board erred in its application of the statute by "appl[ying] the incorrect legal standard by requiring [p]etitioner to show that she was permanently and totally disabled from the general area of her ordinary employment." In addition, petitioner claims the "permanent and total disability" standard "was promulgated [by] N.J.A.C. 17:1-6.4[,] [which] became effective on June 20, 2016." Because petitioner's application dated August 26, 2013, predates the effective date of N.J.A.C. 17:1-6.4, and because the statute may not be applied retroactively, petitioner argues she only had to prove her condition disabled her from performing the specific duties of "her job as a middle school math teacher, as opposed to . . . the general area of her ordinary employment." We disagree.

N.J.A.C. 17:1 "governs the disability retirement application process for various State public retirement systems," including ordinary disability benefits pursuant to N.J.S.A. 18A:66-39(b). In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 393, 396-97 (upholding N.J.A.C. 17:1-6.4 but slightly modifying subsection (b)(5)). N.J.A.C. 17:1-6.4(a) requires that "each disability retirement applicant must prove . . . a total and permanent disability that renders the

15

applicant physically or mentally incapacitated from performing normal or assigned job duties."

However, "[a] regulation may apply retroactively if the Legislature or agency has expressed that intent, either explicitly or impliedly, and retroactive application would not cause a manifest injustice or an interference with a vested right." Rahway Hosp. v. Horizon Blue Cross Blue Shield of N.J., 374 N.J. Super. 101, 112 (App. Div. 2005) (citing State Troopers Fraternal Ass'n v. State, 149 N.J. 38, 54 (1997)). Here, N.J.A.C. 17:1-6.4 neither explicitly nor impliedly expresses an intent of retroactive application. Therefore, the Board was required to apply the prior standard and properly did so.

Prior to the passing of N.J.A.C. 17:1-6.4, in order to qualify for ordinary disability retirement benefits under N.J.S.A. 18A:66-39(b), an applicant must establish by a preponderance of the credible evidence that he or she is "physically or mentally incapacitated for the performance of duty and should be retired." "The applicant for ordinary disability retirement benefits has the burden to prove that he or she has a disabling condition and must produce expert evidence to sustain this burden." Bueno v. Bd. of Trs., Tchrs. Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008) (citing Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008)); see also Kasper,

164 N.J. at 573 ("Ordinary disability is conferred when a teacher . . . is 'physically or mentally incapacitated for the performance of duty and should be retired.'" (quoting N.J.S.A. 18A:66-39(b))).

A disabling condition requires an applicant to prove "incapacity to perform duties in the general area of his [or her] ordinary employment." Skulski v. Nolan, 68 N.J. 179, 205-06 (1975). An applicant is "physically or mentally incapacitated" if he or she is not "employable in the general area of his ordinary employment." Bueno, 404 N.J. Super. at 129 (quoting Getty v. Prison Officers' Pension Fund, 85 N.J. Super. 383. 390 (App. Div. 1964)). Moreover, an applicant is not inherently disabled merely because he or she "is disabled from performing the specific function for which he [or she] was hired." Ibid. (quoting Getty, 85 N.J. Super. at 390); see also id. at 131. ("No reported decision has been called to our attention where an ordinary disability retirement pension was granted to a teacher who only established an inability to perform his or her specific job for a specific board of education nor have we found one.").

Nor is an applicant considered disabled if he or she can "teach[] in a more supportive environment." Bueno, 404 N.J. Super. at 127. If an applicant is no longer able to perform his or her assigned job duties and a school district has no alternative work available, the applicant, at a minimum, must prove:

an "incapacity to perform duties in the general area of his [or her] ordinary employment" for other employers and may even be required to prove [an] "inability to perform substantially different duties or . . . produce evidence of [his or her] general physical [or mental] unemployability" in order to qualify for ordinary disability retirement benefits.

[Bueno, 404 N.J. Super. at 131 (third and fifth alterations in original) (quoting Skulski, 68 N.J. at 206).]

An applicant is deemed disabled if no supportive environment exists. See, e.g., In re Grossman, 157 N.J. Super. 165, 168 (App. Div. 1978) (finding a teacher disabled for pension purposes where no school district would employ the teacher because of her medical "status and the feared effect that may have on [the] pupils she m[ay] be called upon to teach").

Here, based upon our careful review of the record, we are convinced the Board applied the appropriate legal standard in determining petitioner was not incapacitated from her duties as a schoolteacher. In its May 15, 2020 final decision, the Board noted an applicant's entitlement to ordinary benefits requires

an applicant [to] establish an incapacity to perform duties in the general area of her regular employment, rather than merely showing an inability to perform his or her specific job. The [applicant] must prove by a fair preponderance of credible evidence in the record that [the applicant] is physically or mentally incapacitated for the performance of duty at the time of separation from service; specifically, that [the applicant] is

18

permanently and totally disabled from the general area of [the applicant's] ordinary employment, as distinguished from the specific function for which [the applicant] was hired.

[(citing in part <u>Bueno</u>, 404 N.J. Super. at 130-31 (emphasis added) (internal citations omitted); <u>Getty</u>, 85 N.J. Super. at 390).]

Petitioner further argues the Board's inclusion of the term "permanently and totally disabled" signifies its misapplication of the appropriate, pre-N.J.A.C. 17:1-6.4, legal standard. But, petitioner's argument ignores: (1) the Board's inclusion of the term "physically or mentally incapacitated," <u>see</u> N.J.S.A. 18A:66-39(b) (requiring proof "the [applicant] is physically or mentally incapacitated for the performance of duty"); (2) the Board's numerous citations to the appropriate case law, <u>see</u> <u>Bueno</u>, 404 N.J. Super. at 131; <u>see also</u> <u>Getty</u>, 85 N.J. Super. at 390 ("[T]he criterion is whether or not [an applicant] is employable in the general area of his [or her] ordinary employment, as distinguished from whether he [or she] is generally unemployable or is disabled from performing the specific function for which [the applicant] was hired." (citations omitted)); and, most importantly, (3) the context in which the term "permanently and totally disabled" was included.

The Board noted "the [applicant] must prove . . . she is permanently and totally disabled from <u>the general area of her ordinary employment</u>, as

distinguished from <u>the specific function[s]</u> for which she was hired." (emphasis added); <u>see</u> <u>Bueno</u>, 404 N.J. Super. at 130 ("[T]he applicant must establish incapacity to perform duties in <u>the general area of his [or her] ordinary employment</u> rather than merely showing inability to perform <u>the specific job for which he [or she] was hired.</u>" (emphasis added) (quoting <u>Skulski</u>, 68 N.J. at 205-06)).

Nor has petitioner cited "case law in support of her proposition" that a "permanent and total disability" is a legal standard separate and distinct from a "physical or mental incapacitation." The term "permanent and total" is neither new nor recently established by the passing of N.J.A.C. 17:1-6.4. "[T]here are two ways in which an educational professional can receive retirement benefits upon becoming permanently incapacitated: ordinary disability[, N.J.S.A. 18A:66-39(b),] and accidental disability[, N.J.S.A. 18A:66-39(c).]" <u>Kasper</u>, 164 N.J. at 573. "Ordinary disability is conferred when a teacher . . . is 'physically or mentally incapacitated . . . .'" <u>Ibid.</u> (citing N.J.S.A. 18A:66-39(b)). In contrast, "[a]ccidental disability is awarded 'if a [teacher] is permanently and totally disabled.'" <u>Ibid.</u> (citing N.J.S.A. 18A:66-39(c)).

Because "higher benefits flow to the recipient of an accidental disability," these two pensions "are dramatically different." <u>See</u> <u>id.</u> at 573-74 (citations

omitted) ("[T]he standards applicable to [accidental benefits] are more stringent than those applicable to [ordinary benefits]."). "The main difference between the two," however, "is that ordinary disability . . . need not have a work connection." Patterson, 194 N.J. at 43-44 (citations omitted). "[I]ncapacitation is all that is required." Kasper, 164 N.J. at 574 (emphasis added).

Courts have used both terms interchangeably when reviewing a Board's denial of an application for ordinary benefits. See, e.g., Bueno, 404 N.J. Super. at 124 (noting in reviewing the petitioner's application for ordinary disability "[t]he sole issue before the Board was whether [the applicant] was totally and permanently incapacitated from the performance of her regular and assigned duties as a teacher." (emphasis added)). Thus, the Board's mere inclusion of the term "permanently and totally disabled" does not inherently signal the Board's misapplication of the appropriate legal standard.

Here, petitioner was not required to merely prove her condition disabled her from performing the specific duties of "her job as a middle school math teacher." Under the appropriate legal standard, as applied by the Board, petitioner was required to prove her condition disabled her from performing "the general area of [her] ordinary employment." Bueno, 404 N.J. Super. at 130 (alteration in original) (quoting Skulski, 68 N.J. at 205). In reviewing the facts

21

of the case, the Board "recognize[d], as did the ALJ, that the inability to perform some aspects of a position does not always equate to incapacitation from the general area of a member's ordinary employment." And, the Board noted petitioner had the "option to request accommodation[s]" for her condition, such as the "use of the elevator[,]. . . a schedule that did not require her to travel between floors[,] [or] [s]he . . . could have utilized a wheelchair or a cane for her classroom duties."

The Board found petitioner's "failure to seek accommodation[s] severely undermine[d] her claim of disability." Therefore, "[t]he Board determined that the medical evidence in the record better support[ed] a finding that [petitioner] is not incapacitated from her duties such that she should be retired." (citing in part N.J.S.A. 18A:66-39(b)); see Bueno, 404 N.J. Super. at 127 (holding an applicant is not disabled if he or she may have continued to "teach[] in a more supportive environment"). Thus, there is no showing that the Board's decision was arbitrary, capricious, or unreasonable and is supported by the credible evidence in the record. In her brief, petitioner does not contest the Board's conclusions on any basis other than the Board erred in its application of the proper standard.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3834-19