129 N.J. Super. 462 (1974)
324 A.2d 78
LAKEWOOD TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A MUNICIPAL BODY, PLAINTIFF-RESPONDENT,
v.
SOUTH LAKEWOOD WATER COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT. SOUTH LAKEWOOD WATER COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
LAKEWOOD TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A MUNICIPAL BODY IN THE COUNTY OF OCEAN, DEFENDANT-RESPONDENT. SOUTH LAKEWOOD WATER COMPANY, A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
LAKEWOOD TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A MUNICIPAL BODY, AND THE TOWNSHIP OF LAKEWOOD, IN THE COUNTY OF OCEAN, STATE OF NEW JERSEY, A MUNICIPAL BODY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1974.
Decided July 17, 1974.
*464 Before Judges COLLESTER, LYNCH and MICHELS.
Mr. Frank R. Ciesla argued for appellant (Messrs. Giordano, Halleran & McOmber, attorneys).
Mr. James J. Jeck argued for respondent Township of Lakewood.
Mr. Alan J. Pogarsky argued for respondent Lakewood Township Municipal Utilities Authority.
The opinion of the court was delivered by LYNCH, J.A.D.
In these consolidated cases South Lakewood Water Company (water company), appeals from various orders entered in the Law Division, arising out of the exercise by the Lakewood Township Municipal Utilities Authority (Authority) of an option granted to the Township of Lakewood (township)[1] under a 1962 township ordinance *465 to purchase the physical assets of the water company. Separate suits were instituted respectively by the Authority (Docket No. L-2085-73PW  hereafter "case 2085"), and by the water company (Docket No. L-1829-73PW  hereafter "case 1829"). Said suits were consolidated and appear here as Docket No. A-1231-72. A third suit (Docket No. L-11181-73PW  hereafter "case 11181") was instituted by the water company against both the Authority and the township. It is here as Docket No. A-1386-73. All appeals have been consolidated.
In case 2085 the Authority filed a complaint against the water company alleging that, having been organized by the township pursuant to N.J.S.A. 40:14B-1 et seq., it lawfully exercised an option to purchase the water company's a sets as referred to in the 1962 ordinance; that the water company rejected its offer of $1,690,000; that the Authority had appointed Howard T. Rosen (Rosen) as its "arbitrator"[2] pursuant to the ordinance; that the water company had appointed John Fellows as its "arbitrator," and prayed that (a) a third arbitrator be designated and (b) for a declaration that the ordinance, properly construed, established the valuation procedure to be that of "arbitration," as distinguished from "appraisement." The water company's motion to dismiss the complaint in case 2085 was denied by the trial judge.
In case 1829, the water company filed a complaint against the Authority, asserting that, while the Authority had purported to exercise the option, it was the township which had the option and not the Authority. The complaint further asserted that the appointment of Rosen by the Authority was invalid. The water company sought a judgment declaring that the exercise of the option by the Authority was invalid.
*466 By way of a second count in case 1829, the water company alleged that, assuming that the Authority did have the right to appoint an "appraiser," the obligation was to appoint a "qualified" appraiser, and Rosen was not qualified. The water company thereupon sought a declaration that the Authority be directed to appoint a qualified appraiser. The Authority's motion to dismiss the complaint in 1829 was granted by the trial judge.
In case 11181, the water company filed a complaint against both the Authority and the township wherein it alleged that since, by order of October 15, 1973, the trial judge had ruled that (a) the Authority had the right to exercise the option, and (b) the right to select Rosen as an "arbitrator," it followed that the water company had an obligation to two independent bodies, namely, both the Authority and the township. Since that was so, the water company sought a declaration that: (a) both the Authority and the township would be bound by the decision of a board of "appraisers"; (b) on transfer to the Authority of its assets, the water company would be entitled to be paid by both the Authority and the township; (c) participation by the water company in the arbitration proceedings would satisfy the company's "arbitration" obligations, and (d) both the Authority and the township would be bound by the decision of the board of arbitrators and would be bound to pay the award of the "majority" of the board of appraisers.
The various allegations and contentions made in these three suits generated the issues which were decided by the trial court and here can be reduced on this appeal to: (1) whether the Authority had the right to exercise the option to purchase the company's assets; (2) whether the 1962 ordinance, properly construed, provided that the valuation process shall be by "arbitration" proceedings or "appraisement," and whether the appointment of Rosen was valid, and (3) whether both the township and the Authority would be bound to pay for the company's assets and, if so, whether a declaration to that effect should be made at this time.
*467 Said issues were disposed of by the trial court by orders dated October 15, 1973, December 5, 1973 and January 16, 1974 (in cases 2085 and 1829), and February 8, 1974 (in case 11181).
In its appeal the water company contends that the trial court erred in (1) holding that the Authority had the right to exercise the option; (2) designating the valuation proceedings as "arbitration" rather than "appraisement," and in holding that the appointment of Rosen was valid, and (3) refusing "at this time," as the trial court said, to determine whether both the township and the Authority would be liable to the water company for payment of its assets.

I.

The right of the Authority to exercise the option.
On November 27, 1962 Lakewood passed an ordinance granting the water company a franchise to supply water for the township. Section 8 of the ordinance provided:
The Township of Lakewood shall have an unlimited continuing option to purchase all of the assets of the South Lakewood Water Company or its successors and assigns. It is understood that this option is irrevocable. The option to purchase shall include all of the assets of the South Lakewood Water Company, including land, plants (whether softening, aeration, aeration treatment or otherwise), wells, pumping stations, collecting reservoirs, basins, plant equipment, pumping equipment, general equipment, transmission mains and accessories, service pipes, meters, fire hydrants, and any other tangible assets together with any and all franchises, water diversion rights and any other rights which may be the property of the South Lakewood Water Company. The option shall not include any equipment or assets required solely for the operation of a water company outside of the Township of Lakewood. The purchase price shall be the value of the physical assets of the corporation. No allowance of any kind shall be made for the goodwill or friendship of the said corporation or for any intangible asset or assets of the corporation in [sic] the event that the parties cannot agree on the purchase price in accordance with the above formula then and in the [sic] event the purchase price, pursuant to the above mentioned formular [sic] shall be determined by a board of three disinterested, competent appraisers, one to be appointed by the Township of Lakewood, one to be appointed by the South Lakewood Water Company or its successors *468 or assigns, and the third to be appointed by two arbitrators so appointed. The decisions of a majority of the Board of Appraisers shall be binding upon the parties. The selection of the Board of Appraisers shall be made within ten days after written notice shall be served upon the South Lakewood Water Company that the Township Committee of the Township of Lakewood desires to exercise said option.
The option to purchase the assets of the South Lakewood Water Company shall be binding upon the South Lakewood Water Company, the successors and assigns. It is further understood and agreed that in the event that the South Lakewood Company should desire to sell its water company the Township of Lakewood shall have the first option to purchase same upon the same terms and conditions as the South Lakewood Water Company is willing to sell to a third party. In the event that the Township of Lakewood does not exercise said option, it is understood and agreed that the continuing option to purchase as herein provided shall still remain in full force and effect and shall be binding upon all of the successors of the South Lakewood Water Company. [Emphasis supplied]
On appeal the water company argues that it is totally unreasonable to rule, as the trial court did, that the Authority had the right to exercise the option and at the same time refuse to determine "at this time" that the township would still be liable for the purchase price of the company's assets. It is contended that the company should be entitled to rely on the credit of the township rather than that of the Authority alone, and that the effect of the trial court's ruling is to permit the township to avoid its obligations under the 1962 ordinance.
The township created the Authority for the purposes set forth in N.J.S.A. 40:14B-1 et seq. While it did not expressly assign to the Authority the option to purchase, N.J.S.A. 40:14B-20(5) provides that a municipal authority may:
[i]n the name of the municipal authority but for the local unit or units and subject to the limitations of this act, * * * acquire by purchase, gift, condemnation or otherwise, or lease as lessee, real property and easements therein, necessary or useful and convenient for the purposes of the municipal authority, and subject to mortgages, deeds of trusts or other liens, or otherwise, and * * * hold and * * * use the same, and * * * dispose of property so acquired no longer *469 necessary for the purposes of the municipal authority; * * *. [Emphasis supplied]
The Authority is the alter ego of the municipality in providing water and sewer service. Darrah v. Eversham Tp., 111 N.J. Super. 62, 65 (App. Div. 1970). It is an agency and instrumentality of the municipality creating it. Jordan v. Zidel, 40 N.J. 244, 248 (1963). See also Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456 (1954). Therefore, even though there was no express formal assignment by the township to the Authority of the right to exercise the option, the right passed to the Authority by virtue of the cited statute. The trial court's action to the same effect is therefore affirmed.

II

Should there be a declaration "at this time" as to whether (a) the township and (b) the Authority is liable to pay for the assets of the Water Company?

(a)

As to the township
As to the township, appellant contends that the trial court's refusal to declare "at this time" that the township will be liable for the purchase of the company's assets, in effect, relieves the township of its obligations pursuant to the ordinance. We disagree. As we have noted, all that the trial court did was to refuse to rule on that issue "at this time." The court's reasoning was that when the time comes to pay for the assets of the water company, the Authority may be able to satisfy that obligation. In that event, since the company will have been paid, the issue as to the township's liability would be academic. If, on the other hand, the Authority was unable to satisfy the obligation, the issue as to the township's liability could then be determined. *470 We agree with the trial court's view and affirm its action in that respect.

(b)

As to the Authority
The unqualified exercise of an option creates a binding, bilateral executory contract of sale. West Caldwell v. Caldwell, 26 N.J. 9, 26 (1958).
In Castle Creek Water Co. v. Aspen, 146 F. 8 (10 Cir.1906), it was held that once a municipality had notified a water company that it intended to exercise its option to purchase its assets, a binding contract was in effect and the municipality could not then refuse to go through with the arbitration provided for in the contract. See also Camden Sewer Co. v. Mayor, etc., of Salisbury, 166 Md. 436, 171 A. 75 (Ct. App. 1934); Rockport Water Co. v. Inhabitants of the Town of Rockport, 161 Mass. 279, 37 N.E. 168 (Sup. Jud. Ct. 1894).
Since we have held that the Authority had the right to exercise the option, it is clearly liable to pay for the purchase of the water company's assets. We see no reason for withholding adjudication to that effect. The trial court erred in refusing to determine "at this time" the liability of the Authority. In that respect, the trial court's action is reversed.

III

Were the valuation proceedings "arbitration" or "appraisement"? Was the appointment of Rosen valid?
The Authority in its suit (case 2085) requested a decision from the Law Division that the proceedings contemplated were "arbitration" rather than "appraisement." On the other hand, the water company, in the second count of its case 1829, sought a declaration in effect that the valuation *471 proceedings were "appraisement." The trial judge held that the proceedings were "arbitration" and ultimately Messrs. Rosen, Conway and Weisenfeld constituted the board of arbitration to determine the value of the water company's property.
The distinction between "arbitration" and "appraisement" is significant. It is pointed out in 5 Am. Jur., Arbitration and Award, § 3 at 520, 521:
An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action before the court. Furthermore, appraisers are generally expected to act on their own skill and knowledge; they may reach individual conclusions and are required to meet only for the purpose of ironing out differences in the conclusions reached; and they are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by ex parte investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue. Arbitrators, on the other hand, must meet together at all hearings, they act quasi-judicially and may receive the evidence or views of a party to the dispute only in the presence, or on notice to, the other side, and may adjudge the matters to be decided only on what is presented to them in the course of an adversary proceeding.
Whether the procedures required are those of an arbitration or of an appraisal is to be found from the intent of the disputants or from the character of the questions and issues to be answered, or both. However, where the agreement so contemplates, the results of an appraisal may be just as binding as the award of arbitrators.
In Sanitary Farm Dairies v. Gammel, 195 F.2d 106, 113 (8 Cir.1952), it was held that where parties to a contract, before a dispute and in order to avoid one, provide for a method of ascertaining the value of something related to their dealings, the provision is one for an appraisement and not for arbitration. In that case a stockholder brought suit against a corporation for specific performance of a contract to repurchase common stock. The contract gave the stockholder an option, without limitation in time, to resell the corporation stock at a set value. The agreement provided *472 that in the event of the inability of the parties to agree upon earnings an audit should be made by an independent auditor and that his determination on earnings would be controlling. The stockholder exercised the option but was unwilling to accept the determination of earnings made by the accountants employed by the company, and the parties then selected Ernst & Ernst to make an audit for the purposes of the contract. The issue, of course, was the nature of the proceedings, the court concluding that under the circumstances of that case an appraisal was involved and under Minnesota law the appraisal is conclusive upon the parties.
A somewhat similar result was reached in Pintard v. Irwin, 20 N.J.L. 497, 509 (Sup. Ct. 1845), wherein Justice Carpenter, in delivering one of the opinions in the case, noted that under the agreement there involved an appraisal of value was intended by the parties. The court there distinguished between appraisement and arbitration, pointing out that the submission did not have the final ending of the controversy as its immediate object. It was but the reference of a collateral fact  the submission of a particular question, forming only a link in the plaintiff's case. The appraisement substituted the judgment of the referee in the place of evidence, leaving the controversy open, and while it may be that the report was necessary as a part of plaintiff's case, a recovery could not be had on the appraisement alone. The court also pointed out that while the appraisement had several of the characteristics of an arbitration, it still fell short of the principal feature, which is the ending of the controversy. The court noted that an appraisement could be likened to the purchase of an article under an agreement to pay what another party says it is worth. In Pintard the parties had entered into a lease of the premises with the understanding that if the premises were sold, plaintiff, who had planted and cultivated the land, should be remunerated, not by the repayment of his expenses but by the payment of one-half of the appraised value. The parties *473 then submitted the controversy to appraisers whose evaluation was binding upon the parties as an "appraisement."
Our more modern cases point out that since a submission to arbitration is essentially a contractual matter, the parties are bound to the extent of their contract. The courts also hold that arbitration is favored by our courts and that arbitration should be compelled in proper situations. In Keppler v. Terhune, 88 N.J. Super. 455 (App. Div. 1965), the contract involved was a lease with an option to the lessee to purchase the land at any time for the fair market value. The lease further provided that if the parties could not agree as to the fair market value, then the land would be appraised by a competent real estate expert and if the appraisal would not be satisfactory to both parties, each party would then choose "an Arbitrator," and submit the matter to arbitration. In Keppler the owner argued that the determination of the fair market value of land was not an issue arbitrable under the statute. The court disagreed and held that it did constitute an arbitrable issue under the provisions of our arbitration statute, N.J.S.A. 2A:24-1 et seq. But the issue was whether arbitration was preferable to litigation  not whether it should rather be "appraisement" which would, if binding, avoid litigation.
In Omaha v. Omaha Water Co., 218 U.S. 180, 30 S.Ct. 615, 54 L.Ed. 991 (1910), the issue was whether a contract between a municipality and a water company for the purchase and sale of a water works system which provided that the property was to pass "at an appraised valuation which shall be ascertained by the estimate of three engineers," contemplated an appraisal or an arbitration. The court held that it was an "appraisal." It said:
An arbitration implies a difference, a dispute, and involves ordinarily a hearing and all thereby implied. The right to notice of hearings, to produce evidence and cross-examine that produced, is implied when the matter to be decided is one of dispute and difference. But when, as here, the parties had agreed that one should sell and the other buy a specific thing, and the price should be a valuation fixed by persons agreed upon, it cannot be said that there was any *474 dispute or difference. Such an arrangement precludes or prevents difference, and is not intended to settle any which has arisen. This seems to be the distinction between an arbitration and an appraisement, though the first term is often used when the other is more appropriate.
It is true that there is some ambiguity in the language of the 1962 ordinance here involved with respect to whether "arbitration" or "appraisement" was contemplated. It speaks of "appraisers," "two arbitrators," and twice refers to "Board of Appraisers." In Annotation, "Arbitration to Fix Price or Damages," 157 A.L.R. 1286 (1945), the general rule of construction of contracts for the proposed purchase or sale of property is said to be: if all differences between the parties have been resolved and all matters adjusted except the price to be paid, the selection of a third person or persons to determine the price, in the absence of indications to the contrary, is held to contemplate a reliance on the individual judgment of such person or persons, particularly if they are selected because of their special knowledge of the subject matter, and so creates duties ministerial in nature as distinguished from judicial, and indicates an act of "appraisal" rather than "arbitration."
We conclude that the ordinance here, directing the selection of "competent" appraisers is to be construed as an act of "appraisement" rather than "arbitration." The order of the trial court directing that the Authority has the right to select one "arbitrator" of its choice, holding that Rosen is a "qualified arbitrator to serve in the arbitration proceedings herein" and that he and Fellows be directed to select a third "arbitrator" to complete the makeup of the "Board of Arbitrators," is reversed.

CONCLUSION
It is ordered:
(1) The Authority had the right to exercise the option under the 1962 ordinance and the Law Division's order *475 of October 15, 1973 to that effect and dismissing count I in case 1829 is affirmed.
(2) The order of October 15, 1973, insofar as it provided that Rosen is a "qualified arbitrator" and dismissing count II in case 1829, is reversed. We make no ruling as to Rosen's qualification in the event that he is hereafter appointed as an "appraiser."
(3) The orders of October 15, 1973 and January 16, 1974, insofar as they hold that the valuation proceedings contemplated by the 1962 ordinance were to be "arbitration" proceedings, and directing that three arbitrators be appointed and that they proceed to evaluate the water company's assets, are reversed, and it is ordered that three qualified appraisers be appointed to conduct an "appraisement" of the assets pursuant to the ordinance. Accordingly, the said orders, insofar as they deny the motion of the water company to dismiss the complaint in Case 2085, are reversed and the complaint therein is dismissed.
(4) The order of the Law Division in case 11181, entered on February 8, 1974, in refusing "at this time" to declare that the township would be liable for the purchase price of the water company's assets is affirmed.
(5) The action[3] of the Law Division in refusing to determine "at this time" that the Authority would be liable for the purchase price of the assets is reversed and it is adjudged that it would be so liable pursuant to the terms of the 1962 Ordinance.
(6) Cases 1829 and 11181 are remanded to the Law Division for proceedings in accordance with the views expressed herein.
We do not retain jurisdiction.
NOTES
[1] The distinction between Township and Authority creates an issue in this case.
[2] As will be seen, whether an "arbitrator" or "appraiser" was to be appointed is another pivotal issue.
[3] It appears that no formal order to this effect was entered, but the court's oral determination evinces this intent.