**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1288-19T4

151 MADISON AVENUE
INVESTORS, LLC,

     Plaintiff-Appellant,

v.

CARE ONE AT MADISON, LLC,

     Defendant-Respondent.

_____

          Argued telephonically May 13, 2020 –
          Decided July 13, 2020

          Before Judges Whipple, Gooden Brown, and Mawla.

          On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1852-19.

          Robert B. Rosen argued the cause for appellant (Hellring Lindeman Goldstein & Siegal LLP, attorneys; Robert B. Rosen, of counsel and on the briefs).

          Patrick T. Collins argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; David Benjamin Wolfe and Patrick T. Collins, on the brief).

PER CURIAM

Plaintiff 151 Madison Avenue Investors, LLC appeals from an October 25, 2019 order denying plaintiff's application for confirmation of an arbitration award and counsel fees, and granting defendant Care One at Madison, LLC its application to disqualify Arthur Linfante from serving as arbitrator in future arbitration proceedings, ordering both parties to designate arbitrators who are to designate a third, and denying counsel fees to both parties. We affirm.

Defendant is a commercial tenant operating a skilled nursing facility in property owned by plaintiff. The lease agreement between the parties provides that on the twenty-first anniversary of the lease, which fell on June 12, 2019, the fixed rent would adjust to 110% of the annual fair market rental value (AFMRV). Pursuant to the lease agreement, the AFMRV was to be initially determined by defendant, who was then to propose it to plaintiff six months before the computation date. If plaintiff disputed defendant's AFMRV, it was to notice defendant within thirty days after receiving defendant's proposal.

If the matter was not resolved between the parties within thirty days of the notice of dispute, the AFMRV was to be "determined by arbitration," where each party was to choose an "arbitrator," the two "arbitrators" were to agree on a third "arbitrator," and then all three "arbitrators" were to "conduct such hearings as they deem appropriate, making their determination in writing, and shall give

notice to [plaintiff] and [defendant] of their determination as soon as practicable; the concurrence of any two of said arbitrators shall be binding." Should no two arbitrators render a concurrent determination, the determination of the third arbitrator was to be binding on the parties. If the two arbitrators failed to agree on a third arbitrator, "either party may apply to the American Arbitration Association . . . for the designation of such arbitrator."

If either party failed to choose an arbitrator within fifteen business days of the expiration of the thirty-day period, the arbitrator chosen by the other side was to make the determination alone. All the arbitrators were required to be "real estate appraisers who are members of the Appraisal Institute or any successor organization thereof and who have had at least fifteen [] years continuous experience in the business of appraising real estate in the Morris County, New Jersey area."

Plaintiff did not agree with defendant's proposed AFMRV of $160,000, which was belatedly submitted on February 4, 2019, and based off the municipality's assessment, so plaintiff submitted its notice of dispute to defendant on February 28. Because plaintiff did not have experience determining an AFMRV, it retained Arthur Linfante of Integra Realty Resources, who had extensive experience appraising real estate in Morris

County, in anticipation of negotiations with defendant in the hopes of coming to an agreement "without having to go through the arbitration process contemplated by the [l]ease [agreement]." Linfante had previously appraised the property in October 2018, basing his appraisal on the value of the corporation as of November 2017, after being appointed by the court to do so in a shareholder dispute.

The parties were unable to resolve the determination of the AFMRV by March 30, and, pursuant to the lease agreement, were required to select arbitrators by fifteen business days later, which was April 19. Plaintiff noticed its chosen arbitrator on April 11; it chose Linfante. Defendant belatedly noticed its chosen arbitrator on April 30, seven days after it was due, to which plaintiff objected and stated by letter the AFMRV would be established solely by Linfante. After communications in May between both parties' counsel discussing comparable sales, including comparable sales plaintiff told defendant were provided to it by Linfante, by letter dated June 27 defendant objected to Linfante serving as arbitrator "given [plaintiff's] ongoing discussions with him as a consultant. Although a well-respected appraiser, [] Linfante's role as an advocate and consultant disqualifies him as a neutral arbitrator." Defendant indicated it would be willing to move forward with its belatedly-proposed

arbitrator in a single arbitrator proceeding, or, if plaintiff would like to propose a new arbitrator as contemplated by the lease, defendant requested it do so "as soon as possible."

Through a letter addressed only to plaintiff dated July 31, Linfante submitted an appraisal report, the purpose of which was stated "to develop an opinion of the market value of the fee simple interest in the property and the [AFMRV]. The client for the assignment is [plaintiff] . . . , and the intended use is for establishing the '[AFMRV]' as of . . . June 12, 2019." "Market value" was defined in the report to be the "most probable" price a property should bring.

The report disclosed, as required by the Uniform Standards of Professional Appraisal Practice (USPAP), that "[w]e have previously appraised the property that is the subject of this report . . . . In October of 2018 we appraised the leased fee value of the property . . . to establish the 'fair value' of the shares of stock of dissenting shareholders." The report also included a paragraph explaining the "opinions of value" were based on "estimates and forecasts that are prospective in nature" and subject to "considerable risk and uncertainty," and "based partly on data obtained from interviews and third-party sources," although the findings were thought to be "reasonable based on available evidence." Linfante's "opinion" of the AFMRV was $529,550. This

was higher than his October 2018 court-ordered appraisal because it was based on the 178 beds reflected on the certificate of need defendant received from the State of New Jersey, whereas his prior appraisal was based on around 120 to 140 beds.

On August 2, plaintiff sent defendant's counsel a letter informing them that since defendant designated its arbitrator out of time, "Linfante became the sole arbitrator and determinant of the AFMRV." It stated "Linfante has determined the AFMRV for the subject property by . . . assessing the value of comparable properties. Based on [] Linfante's appraisal, the AFMRV effective June 12, 2019 is $529,550 . . . the annual rent is 110% of the AFMRV, or $582,505." This was an increase of 224% of what defendant was currently paying. Linfante's report was not attached.

On August 15, defendant submitted a demand for arbitration to the American Arbitration Association. Plaintiff responded by letter asserting defendant's demand for arbitration was moot as the issue of the AFMRV was already considered and decided by Linfante, its chosen arbitrator, pursuant to the lease agreement since defendant submitted its arbitrator after the deadline. Plaintiff told defendant Linfante issued a report finding the AFMRV was

6

$582,505 "after conducting his investigation," and attached a copy of Linfante's appraisal report; this was the first time defendant saw the report.

The next day, August 28, plaintiff filed a complaint seeking confirmation of the arbitration award, counsel fees and costs, and dismissal of the arbitration before the American Arbitration Association. The court entered an order to show cause as to why plaintiff's arbitration award should not be confirmed. Defendant opposed the relief sought by plaintiff and cross-moved for an order disqualifying Linfante and directing that both parties designate respective party arbitrators pursuant to the provisions of the lease agreement. Defendant's counsel certified Linfante never contacted defendant, and that defendant did not submit any materials to Linfante or receive notice any arbitration proceeding was occurring. At least two underlying facts on which Linfante relied to determine the AFMRV were in dispute—whether to rely on assisted-living comparable sales versus skilled nursing facility comparable sales, and the number of beds that should be used in calculating the AFMRV.

Linfante certified he was initially retained by plaintiff in February 2019 "as a consultant in anticipation of future negotiations between [plaintiff] and its tenant [defendant] with respect to [the subject] property." In April, he was asked to be plaintiff's "expert real estate appraiser in connection with an arbitration

proceeding to establish the AFMRV" of the property, and that in his "capacity as a party-appointed arbitrator" he "fully understood that it was [his] responsibility to act fairly and in good faith, and determine the AFMRV based on established appraisal guidelines, including the [USPAP], the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute, and applicable state appraisal regulations." He certified he "acted fairly and impartially" at all times and, while he did have "several conversations" with plaintiff's counsel between February and April of 2019 "in connection with the negotiations ongoing" between the parties, as well as "later in the course of [his] independent research regarding the [p]roperty," he certified "at no time did [he] allow [plaintiff's] counsel to influence [his] appraisal, cause [him] to depart from the appraisal guidelines or prejudice [his] ultimate determination of the AFMRV."

He pointed out that his certification included in his report indicated he had no bias with respect to the property, and that his engagement and compensation for completing the assignment were not contingent on developing or reporting pre-determined results or results in favor of plaintiff or anyone else. He certified plaintiff's counsel "provided [him] with several comparable sales of the [p]roperty that [he] underst[ood] were provided to [plaintiff]'s counsel by

[defendant]'s counsel." He noted that in his report he "used the sales comparison approach in developing an opinion of the value," and analyzed land sale transactions "provided by [plaintiff's] and [defendant's] representatives in addition to [his] typical primary research protocol," and that out of five comparable sales used to determine the AFMRV, one of those was a property referred to by defendant's counsel. He also denied disclosing his deliberations or factors leading him to conclude the AFMRV, nor discussing any material issues with plaintiff or its counsel after determining the AFMRV and preparing the appraisal report.

At the order to show cause hearing, defendant argued Linfante was not an arbitrator, but an appraiser retained to assist plaintiff during negotiations beginning in February, whom plaintiff "magically transformed into an arbitrator," and that it was not in dispute defendant had "no notice of hearing, arbitration statements, arbitration hearings, an opportunity to submit evidence, an opportunity to be heard, an opportunity to submit expert testimony, an opportunity to be represented by counsel, or an opportunity to submit briefs." Defendant argued the plain language of the lease called for the AFMRV to be determined by "arbitration," not by "appraisal." Defendant argued that just because the arbitrators were required to have expertise in appraisal did not mean

only an appraisal was required; rather, it noted arbitrators are frequently appointed based on their specialized expertise. Defendant asserted Linfante decided all facts on his own without an arbitration because he acted as an expert.

The judge found that although Linfante had an excellent reputation as an appraiser and was very highly regarded by both parties, there was no "'give and take' that an arbitration process should, to some degree, take into account." The judge found there was no "overture or invitation to representatives of [defendant]" to either come to Linfante's office or to meet to exchange information, "whether it be patient population, what are the actual number of beds, versus the certified number of beds." The judge noted Linfante's appraisal appeared to be thorough but "[did] not look like . . . what I would expect from what I would define as an arbitration process, with equal input from all parties. It's one thing to designate a sole arbitrator," and another to have that sole arbitrator just go out and "do his thing," and that even if it were done as professionally as possible, "there was no communication back and forth, exchange of information," which the judge stated "ought to be present" as a "keystone of the arbitration process."

The judge determined the case needed a "fresh start with new faces, new individuals involved," as Linfante had already articulated a position without a

minimum appropriate level of input and involvement from defendant. He noted that it could be problematic for an appraiser to "back off" his own prior appraisal number and reach a lower number for the same property. Therefore, he ordered each party to choose an arbitrator with no prior contact with the property, and that, while the New Jersey Arbitration Act (Act), N.J.S.A. 2A:23B-1 to -32, does not require a formal hearing, there should be some kind of conferring, participatory process and "communication pipeline." He stated that had not been done, and needed to "be done fairly." The parties were to follow the process as set forth in the lease, and whatever AFMRV emerged from that process would be retroactively effective to June 12, 2019. This appeal followed.

## I.

We review orders to compel arbitration, which are deemed final for purposes of an appeal under Rule 2:2-3(a), de novo. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). We also review a contract de novo, owing no special deference to the trial court. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014).

## A.

A court may enforce an agreement to arbitrate under N.J.S.A. 2A:23B-26(a), and there is a "strong preference to enforce arbitration agreements."

Hirsch, 215 N.J. at 186. Arbitration is, "at its heart, a creature of contract," Kimm v. Blisset, LLC, 388 N.J. Super. 14, 25 (App. Div. 2006), and "since a submission to arbitration is essentially a contractual matter, the parties are bound to the extent of their contract," Lakewood Twp. Mun. Utils. Auth. v. S. Lakewood Water Co., 129 N.J. Super. 462, 473 (App. Div. 1974). A court may not rewrite a contract "by substituting a new or different provision from what is clearly expressed in the instrument." Rahway Hosp. v. Horizon Blue Cross Blue Shield of N.J., 374 N.J. Super. 101, 111 (App. Div. 2005) (quoting E. Brunswick Sewerage Auth. v. E. Mill Assocs., 365 N.J. Super. 120, 125 (App. Div. 2004)). Further, a court may not "make a better contract for either party, or supply terms that have not been agreed upon." Ibid. (quoting Bar on the Pier, Inc. v. Bassinder, 358 N.J. Super. 473, 480 (App. Div. 2003)). "Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991) (citations omitted).

Plaintiff argues even though the words "arbitration" and "arbitrator" were used in the lease agreement, the context of the lease indicates an arbitration in the traditional sense was not contemplated, but intended an "appraisement" to

12

fix a value, which does not require a give and take or equal input of the parties. We disagree.

Elberon, which plaintiff cites in support of its position, is distinguishable in that the contract used the term "appraiser" instead of "arbitrator"; the parties there entered into a fire insurance policy "agreement for submission to appraisers," which is not governed by the Act, but is governed by N.J.S.A. 17:36-5.20, which is not applicable here. Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1, 5 n.1, 7, 17 (1978). Lakewood, 129 N.J. Super. at 474, is also distinguishable, in that the ordinance that set forth the agreement was ambiguous because the terms "appraisers" and "arbitrators" were used interchangeably, requiring the court to look beyond the plain language to discern the intent of the parties. There, the court found appraisal was appropriate, stating:

> [T]he general rule of construction of contracts for the proposed purchase or sale of property is said to . . . in the absence of indications to the contrary, . . . particularly if [the decision-makers] are selected because of their special knowledge of the subject matter . . . indicate an act of "appraisal" rather than "arbitration."
>
> [Ibid.]

However, the Lakewood court did note that determining fair market value of land where the contract called for an "[a]rbitrator" and submission to "arbitration" if parties disagreed on the appraised value, had been found to be an arbitrable issue. Id. at 473 (citing Keppler v. Terhune, 88 N.J. Super. 455 (App. Div. 1965)).

Plaintiff also cites City of Omaha v. Omaha Water Co., 218 U.S. 180, 191 (1910) in support of its position, but there, the ordinance called for the "appraised valuation" to be determined by the estimate of "three engineers." In considering whether arbitration or appraisal was contemplated, the Court quoted Sir John Romilly, who stated there was a "distinction between an existing difference and one which may arise," and that "unless a difference has actually arisen, it does not appear to . . . be an arbitration," but if

> after dispute and discussion respecting the price, they . . . agree that the matter shall be referred to his arbitration, that would appear to be an "arbitration," in the proper sense of the term . . .; but if they agree to a price to be fixed by another, that does not appear to me to be an arbitration.
>
> [Id. at 194-96 (quoting Collins v. Collins, 26 Beav. 306).]

The Court in Omaha noted that because there was no antecedent disagreement as to price and the ordinance under which the purchase was to be

made stated the estimation was to be made by "three engineers," appraisal was appropriate.  Id. at 196.

Here, however, in addition to clearly and unambiguously using the terms "arbitrators" and "arbitration," the lease agreement only required arbitration in the case of a dispute—if the landlord did not agree to the tenant's initial proposal of the AFMRV.  Therefore, not only is Omaha distinguishable in that the ordinance in Omaha did not use the word "arbitration" or "arbitrator" anywhere, but also because here the arbitration was only to occur after an antecedent disagreement on price.  Therefore, that is further evidence, in addition to the unambiguous language in the agreement at issue here, that an arbitration was required versus a mere appraisal or arbitration in the form of an appraisement. The unambiguous use of the word arbitrators must be read plainly; even if the "general" way to determine value or loss is appraisal, parties are free to contract as they see fit, and here they unambiguously contracted to use "arbitrators" and "arbitration" if plaintiff did not agree to defendant's initially-proposed AFMRV.

We reject plaintiff's argument that because the "arbitrators" were required by the lease agreement to be appraisal experts, only an appraisement was necessary.  To the contrary, "[a]rbitrators generally are laypersons who bring to arbitral proceedings their technical expertise and professional skills," 6 C.J.S.,

Arbitration § 89 (2020 update) (citations omitted), and "[o]ften, arbitrators are purposely chosen from the same trade or industry as the parties in order to bring special knowledge to the task of deciding," American Arbitration Association, The Code of Ethics for Arbitrators in Commercial Disputes 1 (March 1, 2004); see also Barcon Assocs., Inc. v. Tri-County Asphalt Corp., 86 N.J. 179, 194 (1981) (recognizing that "arbitrators are often chosen precisely because they are experienced in the industry in which the dispute has arisen"). Further, should the two chosen arbitrators not agree on the third arbitrator, the third arbitrator was to be appointed by the American Arbitration Society. Therefore, the agreement called for an arbitration as it is plainly understood.

B.

Plaintiff argues that even if arbitration is required under the lease agreement, the trial court erred in requiring a "give and take" because neither the lease agreement nor the Act require a hearing, and the Act gives an arbitrator wide discretion to conduct an arbitration in any manner the arbitrator considers appropriate to dispose of the matter fairly and expeditiously. Plaintiff contends Linfante's consideration of comparable sales submitted to plaintiff's counsel by defendant was sufficient consideration of defendant's input. We disagree.

Under Rule 1:40-2(a)(1), arbitration is "[a] process by which each party or its counsel presents its case to a neutral third party, who then renders a specific award." The "arbitrator's role is evaluative, requiring the parties to present their evidence for a final determination." Minkowitz v. Israeli, 433 N.J. Super. 111, 144 (1981) (citing R. 1:40-2(b)(2)).

The arbitration process is governed by both the parties' contract and by statute; in New Jersey intrastate matters are governed by the Act. State Farm Guar. Ins. Co. v. Hereford Ins. Co., 454 N.J. Super. 1, 5 (App. Div. 2018). An arbitration agreement may define procedures to be used, the method for initiating proceedings, and the manner in which the process is conducted, and the Act authorizes courts to recognize and enforce arbitration agreements. Minkowitz, 433 N.J. Super. at 133 (citing N.J.S.A. 2A:23B-5 to -6, -9, and -15). Arbitrators have broad powers to resolve disputes, and judicial involvement is limited—once parties contract for binding arbitration, the court may only enforce orders or subpoenas issued by the arbitrator, confirm the arbitration award, correct or modify an award, or, in limited circumstances, vacate an award. Id. at 134 (citing N.J.S.A. 2A:23B-17(g), -22, and -23 to -24).

However, "a corollary of the support accorded arbitration by the [L]egislature and courts of New Jersey is that arbitrators must adhere to high

A-1288-19T4

standards of honesty, fairness, and impartiality in exercising power." 7 N.J. Pleading and Practice Forms § 57.2 (2019 update) (citing Barcon, 86 N.J. at 188).

Under N.J.S.A. 2A:23B-15(a), "[a]n arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding." (Emphasis added). While not required to hold a hearing, State Farm, 454 N.J. Super. at 6, the arbitrator may hold conferences with the parties before a hearing and determine admissibility, relevance, materiality, and weight of any evidence, N.J.S.A. 2A:23B-15(a).

The Act's conferral of authority is broad, and "'does not require any particular procedures, mandate discovery, compel the maintenance of a record, command a statement by the arbitrator regarding his findings and conclusions, or an expression of the reasons why he reached the result that he did[]' unless expressly required under the parties' arbitration agreement." Minkowitz, 433 N.J. Super. at 144-45 (quoting Johnson v. Johnson, 204 N.J. 529, 546 (2010)). However, the hallmark of an arbitrator is neutrality, and an arbitrator should have "the appearance of a neutral factfinder." Id. at 142.

N.J.S.A. 2A:23B-11(d) permits a party arbitrator to be predisposed toward the appointing party, but "[f]rom and after the commencement of an arbitration,

an arbitrator shall act in good faith and exercise the arbitrator's responsibilities in a manner consistent with the authority placed in the arbitrator by the courts of this State and this [A]ct." While an arbitrator designated by a party "may approach the arbitration proceedings with some sympathy for the position of the party designating him," the arbitrator "should conduct the proceedings in an evenhanded manner and treat all parties with equality and fairness at all stages of the proceedings." Barcon, 86 N.J. at 190 (citations and internal quotation marks omitted).

Here, Linfante did not have any direct contact with defendant, and defendant did not have the opportunity to submit any materials or statements in support of its position, other than a few comparable sales that were filtered through plaintiff's counsel; defendant asserts it was not even aware Linfante had started any proceeding. While an arbitrator does have wide latitude to conduct an arbitration as he or she sees fit to dispose of the matter fairly and expeditiously, defendant here was not treated evenhandedly, and while this was certainly an expeditious way to dispose of the matter, it cannot be said to be fair.

Linfante's process looked more like an appraisal than an arbitration, which is not what was called for under the plain language of the lease agreement.

> A distinction is often drawn between an arbitration and a mere appraisal or valuation,[] or proceeding in the

19

> nature of an appraisal.[] Although an appraisal may be used as another form of alternative dispute resolution, it is not arbitration.[] An appraisal is an informal, independent investigation conducted by individuals who base their decisions on their own knowledge.[]
>
> [6 C.J.S., Arbitration § 2 (2020 update).]

"Arbitrators are not identical with, and hence are to be distinguished, at least in some respects, from . . . appraisers.[] It has been stated that an arbitrator is more than a mere appraiser,[] and an arbitrator is viewed, in effect, as a private judge.[]" 6 C.J.S., Arbitration § 89 (2020 update) (citations omitted). "Appraisers act on their own skill and knowledge, need not be sworn and need hold no formal hearings so long as both sides are given an opportunity to state their positions." Elberon, 29 N.J. at 17. "The distinction between 'arbitration' and 'appraisement' is significant." Lakewood, 129 N.J. Super. at 471. "[Appraisers] are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by ex parte investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue." Ibid. (citation omitted).

Here, Linfante conducted his investigation and compiled his report on his own, and while he considered a few comparable sales that he received from plaintiff's counsel that he "understood" were from defendant, even these were

apparently without defendant's knowledge, as defendant did not even realize a proceeding was occurring. Defendant was not permitted to submit a statement on its position on the underlying disputed facts or the AFMRV, as is even required under a mere appraisement. Therefore, Linfante's investigation and report appear to be of the nature of an expert report prepared for plaintiff, and no arbitration in any sense of the word appears to have been conducted.

Neither did Linfante comply with other arbitration requirements, such as disclosing potential conflicts of interest to both parties before proceedings began and providing both parties with notice and a copy of the final determination and award under N.J.S.A. 2A:23B-11, -12, and -19.

N.J.S.A. 2A:23B-11(c) states that "[a]n individual who has a known, direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party may not serve as a party arbitrator if such information has not been disclosed pursuant to section [twelve] of this [A]ct.[]" Section twelve states that "[b]efore accepting appointment," a potential arbitrator must disclose "to all parties" "any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding," which includes a financial or personal interest in the outcome and an existing or past relationship with any of

the parties. N.J.S.A. 2A:23B-12(a)(1) and (2) (emphasis added). Where an arbitrator fails to disclose such facts, and a party timely objects, a judge may vacate the arbitrator's award. N.J.S.A. 2A:23B-12(d).

Here, Linfante made a "disclosure" in his report that he had appraised the property in October 2018. However, the report was well after his appointment as arbitrator, was not sent to defendant, and defendant asserted it did not know until Linfante's certification dated October 2019 that Linfante was serving as plaintiff's consultant during negotiations since February, and not until the hearing that he had previously appraised the property at a lower value using the lower number of beds. Linfante did not make the disclosures before any "proceeding" began, did not make the disclosure directly to both parties, and did not even send his report directly to defendant.

Further, under N.J.S.A. 2A:23B-19(a), the arbitrator is required to make a record of an award and to "give notice of the award, including a copy of the award, to each party to the arbitration proceeding." (Emphasis added). This is also called for in the lease agreement, where the arbitrators "shall give notice to [plaintiff] and [defendant] of their determination as soon as practicable." (Emphasis added). Here, defendant only received the report and notice of the "award" through plaintiff's counsel; Linfante did not provide defendant with

either notice or a copy of the award. That Linfante did not comply with these requirements under the Act is further indication he was not acting as an "arbitrator," but rather as plaintiff's expert appraiser and there was no "arbitration."

II.

Plaintiff argues the method of choosing an arbitrator did not fail, and the methodology whereby defendant waived its choice of arbitrator by submitting it late must be upheld under N.J.S.A. 2A:23B-11(a). Plaintiff argues the judge impermissibly modified the terms of the lease agreement by ruling a new arbitration was to be held and that defendant has the right to designate an arbitrator after waiving that right the first time. Plaintiff asserts if there is a new proceeding, defendant should not get the benefit of a three-person arbitration with one arbitrator designated by defendant, but that the arbitration should be conducted solely by the arbitrator designated by plaintiff.

N.J.S.A. 2A:23B-15(e) states that "[i]f an arbitrator ceases or is unable to act during the arbitration proceeding, a replacement arbitrator shall be appointed in accordance with section [eleven] of this [A]ct[] to continue the proceeding and to resolve the controversy." N.J.S.A. 2A:23B-11(a) states if the parties' agreed-to method of appointing an arbitrator fails, or if an appointed arbitrator

23

fails, "the court, on application of a party to the arbitration proceeding, shall appoint the arbitrator."

Here, the agreed-upon method did fail—defendant was late submitting its arbitrator and plaintiff's "arbitrator" did not actually arbitrate, but served in the capacity of plaintiff's expert appraiser. However, neither party asked the court to appoint an arbitrator. Because a court's powers related to arbitration are limited, the arbitration agreement should be enforced, and the logical place to do so is at the point in the agreement where each party did not properly adhere to the agreement, which is in choosing an "arbitrator."

Plaintiff had the opportunity to choose an arbitrator to conduct a fair, expeditious, and evenhanded proceeding alone, but instead chose to use its previously-retained appraisal consultant and to filter all defendants' communications through its own counsel. Linfante's report relied on only a few comparable sales from defendant provided through plaintiff's counsel and did not give defendant the opportunity to provide so much as a statement, which, under Lakewood and Elberon, is required even where a mere appraisement is conducted. Therefore, we agree with the judge's order directing the parties to each choose an arbitrator and proceed pursuant to the lease agreement from there.

III.

Finally, plaintiff argues the judge erred by disqualifying Linfante as an arbitrator going forward, because in the three-person arbitration the judge ordered, plaintiff is permitted to designate its own arbitrator who would be expected to formulate his or her own opinion, then meet and confer to attempt to come to a consensus with the other arbitrators. Plaintiff notes the lease agreement provides that should no consensus be reached, the third neutral arbitrator is to make the determination, so Linfante's previously-formulated opinion is not relevant to his ability to be a fair arbitrator in this three-person procedure.

The judge made no findings as to whether Linfante's communications with plaintiff, and his failure to disclose them, were evident partiality warranting his disqualification under N.J.S.A. 2A:23B-12(d) and N.J.S.A. 2A:23B-23(a)(2). However, the judge did find that Linfante now has a self-interest in not contradicting his own appraisal report, which was created without any direct communication with and extremely limited input from defendant, which was not the fairness and evenhandedness with which an arbitrator is required to act. This is a fact that a reasonable person would consider likely to affect the impartiality of Linfante in the arbitration proceeding, which could be grounds for vacating

an award under N.J.S.A. 2A:23B-12(c), which gives a judge discretion to vacate an award should a party timely object to the arbitrator based on the disclosure of a personal interest or past relationship under N.J.S.A. 2A:23B-12(a).  This has the potential to further protract an already protracted process, and would not promote the "fair and expeditious" goals of arbitration.  Therefore, we discern no abuse of discretion with the judge's disqualification of Linfante as plaintiff's arbitrator going forward.  However, it was not in dispute and both parties agreed that Linfante was an experienced and qualified appraiser, so we see nothing to preclude plaintiff's new arbitrator from considering Linfante's report for what it is—an expert report that supports plaintiff's position—should he or she find its consideration would contribute to reaching a fair and expeditious determination.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION